UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

E.C.C. MOVERS LLC,

                          Plaintiff,

    v.

FAIRPOINT COMMUNICATIONS, INC.,

                          Defendant.
_____

**DECISION
and
ORDER

18-CV-769V(F)**

APPEARANCES:        ROSCETTI & DeCASTRO, P.C.
                            Attorneys for Plaintiff
                            DAMON A. DeCASTRO, of Counsel
                            730 Main Street
                            Niagara Falls, New York  14391

                            RYAN SMITH & CARBINE, P.C.
                            Attorneys for Defendant
                            ERIC J. MORGAN,
                            MARK F. WERLE, of Counsel
                            98 Merchants Row
                            Rutland, Vermont   05702

**JURISDICTION**

This case was referred to the undersigned by Hon. Lawrence J. Vilardo by order filed August 30, 2018 (Dkt. 6) for all pretrial matters. It is presently before the court on Defendant's motion to transfer the case to the Northern District of New York pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)").[1]

---

[1] Motions for change of venue pursuant to § 1404(a) are non-dispositive. "A motion to dismiss for improper venue is considered non-dispositive, as opposed to a motion to transfer, which a magistrate judge has the authority to hear and determine pursuant to a referral under 28 U.S.C. § 636(b)(1)(A)." *Daniel v. Am.Bd. of Emergency Med.*, 988 F.Supp. 127, 255, n. 157 (W.D.N.Y. 1997) (citing *Michelli v. City of Hope*, 1994 WL 410964, *6 n. 1 (S.D.N.Y. 1994); *O'Brien v. Goldstar Technology, Inc.*, 812 F.Supp. 383 (W.D.N.Y. 1993); and *Russell v. Coughlin*, 1992 WL 209289, *1 (S.D.N.Y. 1992)); *see also Salgado v. NYS Dep't of Corrections and Community Supervision,* 2018 WL 1663255, at *2 (W.D.N.Y. Apr. 6, 2018) ("[m]ajority of recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive") (collecting cases)).

## BACKGROUND

Plaintiff initiated suit by filing, on June 13, 2018, the Complaint in New York Supreme Court, Niagara County, alleging negligence. Defendant timely removed the action to this court pursuant to 28 U.S.C. § 1446(b) on July 12, 2018, based on diversity jurisdiction under 28 U.S.C. § 1332(a). By papers filed November 5, 2018 (Dkt. 15) Defendant moved for a transfer of venue to the Northern District of New York together with a Certification In Support Of Motion To Transfer Venue (Dkt. 15-2) ("Defendant's motion"). Plaintiff filed its Memorandum of Law in Response to Motion To Transfer Venue on November 29, 2018 (Dkt. 19-1) (Plaintiff's Opposition"). On January 3, 2019, Defendant filed its Reply Memorandum In Further Support Of Motion To Transfer Venue (Dkt. 26) ("Defendant's Reply"). On March 27, 2019, Defendant filed its Motion To Supplement Motion To Transfer Venue (Dkt. 27) ("Defendant's Motion to Supplement"). On April 9, 2019, Plaintiff filed Plaintiff's Further Affirmation In Response To Motion To Transfer Venue (Dkt. 29) and Reply Affirmation and Memorandum To Defendant's Supplemental Motion To Transfer (Dkt. 29-1) ("Plaintiff's Response"). By Order filed April 18, 2019 (Dkt. 30) Defendant's Motion to Supplement was granted. Oral argument on Defendant's motion was deemed unnecessary.

## FACTS[2]

Plaintiff alleges it is a locally owned and operated short-distance moving company which contracted with a local customer, J.B. Hunt, to provide delivery services for J.B.

---

[2] Taken from the pleadings and papers filed in this action.

Hunt in the Albany, New York region at a flat fee of $900 per delivery trip.  Defendant is a cable service provider for the area of Columbia County including the Town of Chatham, New York ("Chatham") approximately 30 minutes southeast of Albany near (12 miles) the New York – Massachusetts border.  Plaintiff alleges that while two of its employees were operating its 2017 Harvester box-type delivery truck on July 9, 2017 on a road in Chatham, Plaintiff's truck struck one of Defendant's cables then strung across the highway at an improper height, *i.e.*, lower than the height required by law for such cables.  As a result of the collision the top of Plaintiff's truck was sheared off, extensively damaging the truck, and necessitating repairs requiring an extended period of time to complete at a cost to Plaintiff of $16,393.  Plaintiff further alleges that because the collision rendered the truck inoperable while undergoing repair Plaintiff was also unable to provide further delivery services for J.B. Hunt for the period July 9, 2017 to November 6, 2017, resulting in a revenue loss of $108,500 based on the delivery service it would have otherwise provided under its contract with J.B. Hunt had Plaintiff's truck been available for this purpose.  Plaintiff further alleges Plaintiff's loss of Plaintiff's ability to perform Plaintiff's contract with J.B. Hunt resulted in a loss of the contract and annual revenue of $234,000 following November 6, 2017.

     Defendant states transfer is warranted by the material operative facts having occurred in the Northern District,[3] convenience of six non-party material witnesses including Defendant's former service manager, and significant calendar congestion in this district.  Dkt. 15-2 ¶¶ 8-10.  In particular, Defendant states these witnesses include those

---

[3]  Columbia County is within the North District of New York.  18 U.S.C. § 112(a).

who observed the accident scene shortly after its occurrence including a local police officer who filed an accident report and two witnesses, one of whom is a tow-truck operator who responded to the accident, and who observed the damage to Plaintiff's truck. Defendant also represents Defendant's former manager will testify concerning Defendant's compliance with applicable regulations with respect to the height of Defendant's cable involved in the incident. *Id.* ¶ 7.

Plaintiff states that the key witnesses are Plaintiff's owner, Plaintiff's truck driver and his helper, a passenger at the time of the crash, a representative of J.B. Hunt who will testify concerning the delivery service contract with Plaintiff and potential future services to be provided by Plaintiff and the related revenue losses, and two other local witnesses to establish the extent of damage to Plaintiff's truck, required repairs and actual repair costs. Dkt. 29 at 2-3.

## DISCUSSION

Motions to transfer require that (1) the proposed transferee district be one where the action "might have been brought," 28 U.S.C. § 1404(c), and (2) the court determines that considering the convenience of parties and witnesses and interest of justice, transfer is warranted, *WD Encore Software, LLC v. The Software MacKiev Company*, 2016 WL 1056628 (W.D.N.Y. Mar. 17, 2016) (internal citations and quotation marks omitted). Such motions pursuant to § 1404(a) are within the "broad discretion of the court." *Id.* Here, the parties do not dispute that this action could have been brought in the Northern

District, particularly in its Albany division,[4] given that the Plaintiff's claim arises out of either Defendant's transaction of business, *i.e.*, the conduct of providing cable service in New York state, specifically Columbia County, as Defendant suggests, Dkt. 15-1 at 4 (referencing N.Y. C.P.L.R. § 302(a)) or, as Plaintiff's Complaint alleges, based on the commission of tortious conduct within this state, specifically, negligence, supporting long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(2). Venue for this case would also be satisfied under 28 U.S.C. § 1391(b)(2) as a "substantial part of the events omission giving rise to [Plaintiff's] claim," *i.e.*, the crash involving Plaintiff's truck and Defendant's cable, occurred in that district. Columbia County is within the northern District.

In determining whether transfer is support by "considerations of convenience and fairness," *WD Encore Software, LLC*, 2018 1056628, at *2 (quoting *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992) (citing *Steward Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))), courts considers nine factors including "'(1) the convenience of witnesses; (2) the location of the relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.'" *WD Encore Software, LLC.,* 2016 WL 1056628, at *3 (quoting *Pilates, Inc v. Pilates Institute*, 891 F.Supp. 175, 183 (S.D.N.Y. 1995) (citing

---

[4] The court takes judicial notice that the Northern District Court sits in several cities within the District including Albany which is the closest District courthouse to Columbia County. *See* Northern District Local R.Civ.P. (2019) Sec. 3.2, referencing General Order 12, providing that civil cases venued in Columbia County, New York, *inter alia*, shall be assigned to a judge sitting in the district's Albany Division.

*Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y. 1995))). No one factor is determinative and other factors may be considered. *WD Encore Software, LLC*, 2016 WL 1056628, at *3 (citing *Malone v. Commonwealth Edison*, 2 F.Supp.2d 545, 547 (S.D.N.Y. 1998). The court therefore addresses each factor as applied to this case in turn.

    (1)    The location of fact witnesses is a major factor in considering a transfer pursuant to § 1404(a). *WD Encore Software, LLC*, 2018 WL 1056628, at *3 (convenience of witnesses evaluation extends to witnesses who are "probable, material" in Lanham Act case who will testify regarding the validity of plaintiff's licensing agreement); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 988 (E.D.N.Y. 1991) (rear end vehicular collision witnesses included police officer who investigated crash in Florida taking measurements and filing accident report, and investigator who photographed accident scene, both resided in Florida supporting transfer from New York to Florida based on convenience of witnesses) (citing cases). Here, so far as is known, the only two witnesses with direct knowledge of the incident are Plaintiff's employees, the driver of Plaintiff's truck and his passenger-helper, who reside in this district. Plaintiff also indicates Plaintiff's owner, James Wilson, will need to testify about Plaintiff's contract with J.B. Hunt, its cancellation and Plaintiff's resultant damages. Plaintiff also lists a representative of J.B. Hunt as a necessary witness to prove Plaintiff's lost business because of the extensive damage to Plaintiff's truck. In addition, a representative of the shop which actually repaired Plaintiff's truck, which repairs were made in this district, would be needed to establish that element of Plaintiff's damages, assuming Defendant

were to contest the issue. Plaintiff also lists two representatives of the truck manufacturer to establish the costs of repair. Dkt. 29 at 2-3.

Defendant represents several witnesses residing in Columbia County will be needed as witnesses including the responding local fire department official, Chief Rideout, who prepared an accident report, and tow-truck driver, Mr. Speed, who observed the damage to Plaintiff's truck. Another witness Defendant intends to call is officer Van Alstyne who observed the accident scene and transmission lines and created a diagram for the police report and who also resides in Columbia County, as does Mr. Andrew McAdoo, Defendant's former manager, who Defendant represents has knowledge of the accident's location and Defendant's compliance with regulations. Thus, the most material fact witnesses from Plaintiff's side are Plaintiff's two employees who were involved in the crash, two or three witnesses to establish the nature of damage to Plaintiff's truck and related repair costs, and two witnesses to support Plaintiff's claim for loss revenue and profits, for a total of seven material fact witnesses. For Defendant, Defendant's former manager, Mr. McAdoo, presently a non-party, the responding police officer Van Alstyne and Fire Chief Rideout are arguably material fact witnesses to assist in reconstructing the crash based on what they observed after the crash regarding whether Plaintiff's version of the event is credible, including whether Defendant's cable was at the correct height, and whether Plaintiff's driver failed to maintain a proper look out for hazards such as a low hanging cable as Plaintiff alleges. The court finds that Mr. Speed, the responding tow truck driver, appears to be a witness who could provide testimony essentially duplicative of that provided by Fire Chief Rideout who prepared a report and Officer Van Alstyne and thus not material. *See Enthone Inc v. Moses Lake*

7

*Industries, Inc.*, 2014 WL 12587065, at *6 (N.D.N.Y. Apr. 10, 2014) (considering, with regard to convenience of witnesses that location of one witness in New York did not weigh against transferring action to Eastern District of Washington where three other witnesses were located, rendering the anticipated identical testimony of the New York witness cumulative); *Herbert Limited Partnership v. Electronic Arts Inc.,* 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004) ("A party seeking to transfer venue 'may not artificially inflate the number of witnesses to be inconvenienced absent transfer by listing witnesses whose testimony is not material.'" (quoting *NBA Properties, Inc. v. Salvino, Inc.*, 2000 WL 323257, at *7 (S.D.N.Y. March 27, 2000))).

Although Defendant indicates Mr. Speed would testify about "conversations" with Plaintiff's employees, Dkt. 15-2 at 3, Defendant does not indicate such "conversations" included any admissions of conduct by Plaintiff's driver supportive of Defendant's comparative negligence and assumption of risk defenses. The testimony of Defendant's other two prospective witnesses, Mr. Brian Molinski, who assisted in "generating the police accident report," Dkt. 15-2 at 3, and Ms. Rebecca Milne, who acted as a records custodian, *id.*, appear to be foundational in nature and thus do not, in the court's view, qualify as material fact witnesses in this case as such testimony is typically rendered unnecessary by virtue of Fed.R.Evid. 902 (allowing as evidence self-authentication of public documents) or by stipulation. Thus, for purposes of assessing transfer, measured by whether the parties' prospective witnesses are material fact witnesses, the court finds the number of Plaintiff's witnesses which qualify under this rubric are seven (7); Defendants' number is three (3). Even if one were to allow for Mr. Speed as a potential material witness and assuming Plaintiff would not require a repair shop witness, the

relative count becomes six (6) for Plaintiff; and four (4) for Defendant, a result which still, on balance, supports Plaintiff's opposition, based on convenience of witness, to transfer. Accordingly, the first factor supports a denial of transfer.

(2) As regards the availability of documents, while Plaintiff's cost of repair records and evidence with respect to Plaintiff's contract with J.B. Hunt are located here, their use will be readily available in either location through electronic means regardless of in which courthouse trial takes place particularly given that such records are typically stipulated for use as evidence at trial absent an issue of their authenticity which does not appear to be a likely issue in this case. The same is true as regards Defendant's documents consisting of the accident reports. As to ease of access to sources of proof, such as the potential for expert analysis of the location of the accident, this factor obviously favors the Northern District on the threshold issue of liability on this issue, including Plaintiff's potential comparative negligence and assumption of risk as asserted by Defendant's affirmative defenses. *See* Answer, Dkt. 3, at 4, 5. However, as to the issue of Plaintiff's lost profits, a significant issue in this case, the locus of proof clearly lies in this district. Accordingly, this factor is neutral as to transfer.

(3) As to convenience of parties, Plaintiff does not conclusively demonstrate that any absence from Plaintiff's business by Plaintiff's principal manager for trial in Albany would have a severe disruptive effect on Plaintiff's business should trial be venued other than in this district. Plaintiff's assertion of potential "financial ruin" in the event of a trial in Albany (Dkt. 19-1 at 7) and that Plaintiff as a small business can ill-afford travel to and from Albany (Dkt. 29 ¶ 15) are not supported by an affidavit by Plaintiff and assertions by counsel in legal memoranda are not evidence. *See Clayborne*

*v. OCE Business Services*, 381 Fed.Appx. 32, 34 (2d Cir. June 18, 2010) (neither conclusory allegations nor legal arguments asserted in legal memoranda constitute evidence). Defendant represents that its former manager would be a material witness and so his presence at trial in this district will not hamper Defendant's business operations. Thus, this factor is also a neutral one regarding transfer in this case.

(4) As to the locus of operative facts, a significant factor, *see Vorobey v. Cleveland Brothers Equipment Co., Inc.*, 2018 WL 1640571, at *1 (citing *Ward v. Stewart*, 133 F.Supp.3d 455, 460 (N.D.N.Y. 2015)) (accident occurred in Pennsylvania with no connection to Western District of New York other than plaintiff's residence), here the primary fact of the collision between Plaintiff's truck and Defendant's cable (Defendant admits Defendant used cables traversing Pond Hill Road, the highway on which Plaintiff's truck was being operated for Plaintiff's business purposes when it struck Defendant's cable, Dkt. 3 ¶ 7), occurred in Columbia County in the Northern District. Thus, this factor favors transfer.

(5) Regarding the availability of process for unwilling witnesses, Defendant contends that it has been advised that "most," Dkt. 15-1 at 8, of its proffered witnesses will not voluntarily testify in Buffalo and that, unlike the Northern District's Albany Division, this district is unable to enforce its subpoena for such witnesses as they reside more than 100 miles from this district's eastern boundary. In support of transfer based on this factor, Defendant states "in the event that any of these [Defendant's] witnesses are unwilling to testify, Northern District would have the power to issue a subpoena compelling their attendance [at trial] whereas a district court in the Western District would not." Dkt. 15-1 at 7 (citing Fed.R.Civ.P. 45(c)(1)) ("Rule 45(c)__"). Defendant's

contention, as stated implies this court cannot issue and enforce its subpoenas for trial testimony by Defendant's non-party witnesses should they remain uncooperative. This assertion, however, is based on an incorrect understanding of Rule 45(c), one based on Defendant's apparent failure to quote fully the text of Rule 45(c)(1)(B)(ii) under which a subpoena issued by the court where the action is pending against a non-party witness who resides within the state may be enforced by the issuing court where "the person (non-party witness] . . . (ii) is commanded to attend a trial <u>and</u> <u>would</u> <u>not</u> <u>incur</u> <u>substantial</u> <u>expense</u>." Fed.R.Civ.P. 45(c)(1)(B)(ii). As the Advisory Committee Notes to the 2013 Amendments to Rule 45(c) adopting this language explains

> Under Rule 45(c)(1)(B)(ii), nonparty witnesses can be required to travel more than 100 miles within the state where they reside, are employed, or regularly transact business in person only if they would not, as a result, incur "substantial expenses." When travel over 100 miles could impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment.

Rule 45, after its 2013 amendments, also clarifies that a subpoena issued pursuant to its authority "may be served at any place within the United States." Fed.R.Civ.P. 45(b)(2).

Thus, if transfer were denied and Defendant was, as a result, required to compel the appearance of the non-party witnesses it has designated as important to its defense at a trial on the issues of Defendant's liability and Plaintiff's alleged damages in this district as Defendant asserts, Dkt. 15-1 at 8, ("most of the nonparty witnesses have advised that they will <u>not</u> <u>voluntarily</u> appear in this District for trial") (underlining added), as fact witnesses, Defendant could subpoena such witnesses to testify at trial in this court through a subpoena issued by this court upon prepayment of any "substantial expenses"

11

that may be incurred by such witnesses in connection with their compliance with Defendant's Rule 45 subpoena, assuming they would, as Defendant has represented, insist on such prepayment. *See Bennett v. Sterling Planet, Inc.*, 2010 WL 11566003, at \*\*8-9 (N.D.N.Y. Mar. 22, 2010) (finding convenience of witnesses weighed against transferring venue where defendant willingly offered to reimburse two non-party witnesses for travel expenses to compel their testimony a Rule 45 subpoena if motion to transfer venue was denied). It is also not the case, as Defendant contends, that if trial takes place in this district "the jury would not have the benefit of live testimony to determine and evaluate the credibility of the [Defendant's] material witnesses." It is correct as Defendant points out that payment of such witness expenses by Defendant would be obviated if trial occurred in the Albany District Court Division, because that court could enforce its subpoena without such payment, but given that Plaintiff's material fact witnesses exceed the number of Defendant's, transfer to the Northern District simply results in shifting that cost (at least in regard to the witnesses denominated by Plaintiff who are not Plaintiff's employees) to Plaintiff as, should transfer be ordered, a Rule 45(c) subpoena would in that case have to issue from the Northern District's Albany Division to Plaintiff's witnesses who reside in this district more than 100 miles from the Northern District's Albany courthouse. Thus, this factor, contrary to Defendant's contention, correctly understood, points away from transfer. Moreover, although Defendant has asserted that the witnesses who reside in the Northern District would not volunteer to testify in Buffalo, Defendant's failure to provide affidavits from such witnesses to this effect renders this factor at best neutral. *See WD Encore Software, LLC*, 2018 WL 1056628, at \*4 (failure to provide affidavits from asserted non-cooperative witnesses

renders this factor neutral (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 333 (E.D.N.Y. 2006)).

(6) In this case, the relative means of the parties factor strongly favors Plaintiff. Based on the submissions, it appears Plaintiff is a small business comprised of "two owners and one employee." Dkt. 29-1 at 3. Defendant's website indicates Defendant's parent company is a large, inter-state cable operator which employs 3,600 employees. Dkt. 29-1 at 3. The disproportional financial capacities of the parties favor the smaller party, here Plaintiff. *Cf. WD Encore Software, LLC*, 2016 WL 1056628, at *4 (where party opposing transfer was 50 times larger than requesting party, this factor weighs in favor of transfer). Significantly, Defendant does not contest Plaintiff's representation with regard to Defendant's greater economic capacity, as Plaintiff argues, to engage in this litigation, rather, Defendant asserts that given the size of Plaintiff's lost revenue damage claim Plaintiff has "sufficient means resources" to litigate this case (Dkt. 15-1 at 9). While that may be true, it ignores that Defendant's resources are nevertheless substantially greater than Plaintiff's, a fact which Defendant appears to concede. Accordingly, contrary to Defendant's assertion regarding the large economic significance of Plaintiff's damage claim as indicative of Plaintiff's ability to litigate this case in the Northern District, this factor is not "neutral" as Defendant asserts, Dkt. 15-1 at 9; rather, it in fact disfavors transfer.

(7) As to the forum's familiarity with governing law, the parties do not dispute both this district and the Northern District are equally capable of discerning and applying New York law as applicable to the key issues, both Defendant's liability based on Defendant's alleged negligence with respect to allowing its cable to hang dangerously

low, and the actionable extent of Plaintiff's damages presented by this case. This factor is thus also neutral.

(8) Regarding the eighth factor – the weight accorded the plaintiff's choice of forum – where the case has no "material relationship or significant connection to the plaintiff's chose forum" the plaintiff's choice is not given the same degree of consideration in evaluating a transfer request to which it would otherwise be entitled. *Hernandez*, 761 F.Supp. at 990 (citing caselaw). Where, however, the relevant factors are equally balanced, plaintiff's choice "should not be disturbed." *Id.* (citing cases). Here, Plaintiff's delivery business which Plaintiff alleges suffered significant economic damage as a result of Defendant's negligence is located in this district and all of the Plaintiff's witnesses relevant to Plaintiff's damage claim are located here. Thus, it cannot be found that there is an absence of any significant nexus to this district such that Plaintiff's choice may be disregarded. Therefore, this factor opposes transfer.

(9) As to the trial efficiency and the interests of justice factor, it is correct, as Defendant submits, that this court is greatly congested given that the median time from commencement of suit to trial in this district is 62.2 months versus 43.7 months for the Northern District. Dkt. 15-1 at 11 citing http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2018.pdf (last visited at September 20, 2018). Although Plaintiff did not commence this action in this court, Plaintiff chose to file this action in Supreme Court, Niagara County where it was amenable to removal and thus the likelihood of incurring delay in this court compared to that which may occur in the Northern District. Accordingly, as transfer to the

14

less congested (statistically speaking) Northern District may facilitate an earlier disposition of this case, this factor favors transfer.

Of the nine factors to be considered, the court finds four (Nos. 1, 5, 6, 8) disfavor transfer, three (Nos. 2, 3, 7) are neutral, and the remainder (Nos. 4 and 9) favor transfer. Accordingly, as the plurality of the relevant factors, with the factors of convenience of witnesses, Plaintiff's capacity to litigate, and Plaintiff's choice of form the most weighty, disfavor transfer, Defendants' motion should be DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motion (Dkt. 15) is DENIED; the court's Order, Dkt. 21, granting a stay of mediation pending Defendant's motion is hereby VACATED. The parties are hereby directed to file, <u>within ten days</u>, a proposed Case Management Order in accordance with Fed.R.Civ.P. 16(b) and 26(f) to schedule further proceedings in this matter.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 1, 2019
      Buffalo, New York